United States v. Earls 22-7051. Mr. Sullivan. May it please the court. Stuart Sullivan, Federal Public Defender in the Eastern District of Oklahoma representing David Leroy Earls in this case. Mr. Earls was convicted of three counts of sexual abuse under Title 18, Section 22-42A-2. And a sexual assault nurse examiner, a nurse in the case, diagnosed the alleged victim with sexual abuse. And I'd like to start with my allegation of error, that that was erroneous. Did you object to that below? Did not. Did not. So it's a plain error review? Well, I'm going to argue not necessarily. The issue was fully briefed. I mean, initially we found out about this, the defense attorneys found out about this, because there was a report penned by Cynthia Sanford that actually said diagnosed confirmed sexual abuse. And as a result of that, as soon as we received that, we filed a motion in limine going over the reasons why that should not be admitted. That that would essentially vouch for the credibility of the witness. That that would be telling the jury what result to reach. And the government had kind of an interesting response in that case. They responded that they had no intent to offer a rape diagnosis. They didn't mention the sexual abuse. Or vouch for CPs, the alleged victim's credibility. In all other grounds, the Daubert motion that we filed, they objected to that. And the judge essentially just adopted, I think, that objection. Basically saying, look, given what the government said, that they aren't going to offer a diagnosis of rape, given that the government said that they're not going to vouch for the credibility of the witness, we are going to overrule the motion in limine in all other regards. So the judge had all of the law in front of him. He had the objection in front of him, granted with the motion in limine. I mean, didn't the judge actually just sort of decide to punt it and not rule on it? Well, there wasn't a... I mean, he didn't issue an order saying what could come in, what couldn't come in. He just said, sort of said, oh, you know, they say they're not going to bring this up. So I'm just going to let's see what happens at trial. He didn't say that. He didn't say that at all. I mean, he basically adopted what the government said, which wasn't as detailed an order as maybe going back we would like to have seen. But the judge did not take anything under advisement, didn't suggest in any way that he was going to delay his ruling until the time of trial. There's no order issued, right? He didn't issue an order? He did. A written order on it? Yes. He issued a written order. That's on volume one, page 175. The judge issued a written order addressing all of the motions in limine. Did you say page 175? It looks like I've got volume one, page 175 is what I've got in my notes. You were starting to say what the order said. What did it say with respect to this sexual abuse testimony? It acknowledged the government's promise not to vouch for the credit of the only witness and not to offer a rape diagnosis in all other respects. The motion in limine was overruled. So it didn't list in detail, but it was pretty clear and it didn't defer anything until the time of trial. So I think there was an adequate record made. So when the evidence did come in with that ending on it, the diagnosis, did you stand up and say, judge, you've already ruled that wasn't admissible, see your order in limine, and this is a violation of that order? Did not. No, there was nothing. In fact, it was kind of interesting. I think there's a problem with sexual assault nurse examiner testimony. I realize that it's coming in. The government has found it helpful in child sex abuse cases because if there's any kind of treatment involved from these nurses, then the evidence that hearsay can get in the statements of the alleged victim can come in through section 803.4 as testimony for the purpose of medical diagnosis. That didn't happen in this case. There was nothing in this case where you could say that Cynthia Sanford was involved in any way in treating CP. In fact, when she defined her role. Before we were going, we were examining what our standard of review would be. Go back to the standard review? Well, you didn't object when the government violated its promise. Surely that means review only for playing error. You didn't bring it to the attention of the judge. The judge could have said, hey, wait, guys, he's promised you wouldn't do that. But they didn't do that. I mean, they promised they wouldn't get into rape. There was actually another rape case. There was another instance of rape that perhaps the government attorney might have. This wasn't covered by the motion limiting. And that makes it even more clear that the review is for plain air. One purpose of limiting review is it'd be so easy to clean things up if you object. You just sort of skated past. You said, I'm not sure I agree with your statement that it's plain air review. But I haven't heard anything to diminish. Fair enough. I would refer this court to now. It's not a case from the 10th Circuit. But it is a case from the 8th Circuit. I cited it. The United States versus Whitted, W-H-I-T-T-E-D, 11 F-3rd 782. That's an 8th Circuit case from 1999. And under somewhat similar facts, the court was able to rule in that case that there was plain air. I'm not saying you lose on plain air review. I'm saying that's the standard of review. And my argument is that regardless of the standard of review, I think we prevail. OK. So even if we do go on plain air, I believe that we would still prevail on that, based on the significance of the error of the diagnosis of sexual abuse. It was extremely important in this case. And that leads me into the second topic that I'd like to address, which is the first issue dealing with the sufficiency of the evidence. This statute, Section 2242A2, when I first read it, the first thought I had in my mind was that this statute's vague. I'm not sure what these people are saying. I'm not sure what this means. But after days of research, I couldn't find any law to support that. So we didn't raise that in the district court. But what we do have here is what I think is the rule of lenity. The rule of lenity has been called a junior version of the vagueness doctrine. It ensures fair warning by resolving ambiguity in criminal statute to apply only to conduct clearly covered. And there was a case, the Mossbrugger case. I think we both cited it. I may have read it first in the government's brief. It's 758 Northwest 2nd, 663. That's a North Dakota case. But it's addressing a statute with similar language. A lot of these cases that I cited are from state courts because we just didn't have a whole lot here in the Tenth Circuit to draw on. But I thought that was a fascinating case because what they did in that case is they essentially explained to my satisfaction, hopefully the court's satisfaction, that the statute's ambiguous because they looked at three different ways that the statute can be interpreted. They looked at a limited view, which potentially that could be called not something that would be ambiguous because the most limited version just simply looks at what the statute says. The statute talks about incapable of appraising the nature of the conduct. You know what it doesn't say? It doesn't talk about the consequences from the conduct. It sticks very isolated directly to the conduct itself. And that limited view, to me, it's my way of thinking, would clearly establish that just dealing with basically the nature of the act, what happened here, how CP was able to describe it, I think even if the burden was on the defense to establish that she was able to appraise the nature of conduct, I believe that we did it. Well, it seems to me that the word incapable and appraising adds an analytical appreciation, which if it had just, she knew the act had occurred. She wasn't unconscious or drunk beyond cognitive skills. It just said that she engaged in a sex act, period, or did a sex act, but this incapable of appraising the nature of something, I think means we have to ask, was this woman capable of making some qualitative evaluation of the act? Not necessarily that it was legal or illegal, but at least more than just, yeah, I know this act happened to me. And that's exactly what the court did in North Dakota, the Mosbacher case. I read the case. I didn't see where that came from, other than just it seems to make sense. It seems to be a logical interpretation of what Congress intended, although what Congress intended is not clear from any legislative record that I was able to see. And the fact that they enacted these laws, I think to try to bring them in line with what sexual abuse laws were in state courts at the time. So in your view, what does somebody have to know? I mean, what does the victim have to be able to appreciate? Well, you know, I frankly... Give me a bullet point. I'm willing to concede under the intermediate view, under the Mosbacher view, where they did, as you just pointed out, Judge, look a little bit beyond just the nature of the act, just the fact that it's a sexual act. They looked at the immediate consequences. They looked at immediate consequences such as pregnancy, whether or not sexually transmitted disease, something like that. That's what they looked at in Mosbacher. Now, they didn't get that from the statute. They just looked at it as kind of, I think, an intermediate way of sort of looking at it, because they also looked at the more detailed view, which I believe that the government favors in this case. That's from a New York case where they took a very broad view and said, you know, we're going to look not just at the immediate consequences, but we're going to look at the far-ranging consequences. We're going to look at the social, moral, economic, all of these sort of amorphous, which I think is the word that they used in Mosbacher and why they decided not to adopt that view, because that's really, when you start talking about difficult to define, vague, ambiguous, I think you've stepped over the line. So as far as avoiding that morass, is your best authority like the model penal code? Well, I think that the model penal code did at least clarify the fact that we're not talking about social or moral values, because that's, to my way of thinking, inherently vague. So, yes, we're not going to go down that path. If we stay with the intermediate path, if we look at CP's testimony in this case, not only did she understand the fact that you could get pregnant and testify that she understood that you could get pregnant from sex, she also actually had a birth control device that she used, and she knew what the birth control device was for. Now, nobody asked any questions about sexually transmitted diseases. I'm intrigued about, if we're not going to do moral or societal values, but we are going to do something more than just simply, I know this physical act happened. What's left if we exclude moral and societal? Describe what is left. I know you don't have a lot of time. Just give me a very brief question. I will have no follow-up questions. And sure, and they talked about that in Mossbroker a little bit. As far as, it's really just a compromise. I mean, for no legal reason, for no cases that were cited in there, for no interpretation of statutory language in that case, I think they just decided to go down the middle of the road. What is considered if you don't consider societal and moral values? Pregnancy and sexually transmitted diseases, some of the most obvious and immediate consequences. There were some other languages that I came across that dealt with, I thought an interesting idea, but once again, not something in the statute, which deals with a person's knowledge that they have the right to refuse, which I think is interesting and relevant, but it's not in the statute. If we look at the statute, it doesn't say consequences, and there are statutes that say consequences. There's an Alaska statute, I cited in my brief, that specifically used the word consequences. The Congress wanted to talk about far-reaching consequences. They couldn't have put that in there, so I think if we're going to interpret this in a strictly textual sense, we stick with just the conduct. If we stretch that to the intermediate test that I described, I think still, even if the burden was on the defense, I think that they established that the CEP did, in fact, understand the immediate consequences of the action. And if I can remove the little time I have left for rebuttal. Yes, you may. Ms. Zerrier? Would you mind picking up where we left off? I'm just intrigued by this word, appraising the nature. It didn't say incapable of understanding what happened, but incapable of appraising the nature, which is kind of laborious words. Do you think that's nothing more than just saying knew the physical act? Or if it's more than that, an appraising the nature, what is it that is more than just appreciating the physical act? May it please the court, Lauren Zerrier from the United States. To address your question, Judge Eagle, some of the state cases that the parties recited took the dictionary definitions of these words, and when you plug all the dictionary definitions into the federal statute, you basically come up with the evaluative notion that you described earlier. A word of praise indicates some need to evaluate and appreciate. The word conduct has a standard of personal behavior, especially based on moral principles. And I would note that the federal statute is not on all fours with the variety of state statutes that Congress considered in 1986 when it enacted the Sexual Abuse Act. It changed the words a little bit. If you look at 18 U.S.C. 2242, the word sex act, sexual act, which is a defined term in that series of statutes, is used several different times in some sections. The word conduct is only used once. And so I would argue that conduct is not the same as sexual act. If Congress intended it to be the same, it would have used the term sexual act again, but it did not. What's conduct then? Conduct in this case is that the victim, the complainant, has to be able to appraise what happened, not only in terms of the sexual act, but the relationship and the circumstances surrounding that sexual act, not in general, but with this particular case. So in this case, what you have is a defendant who took advantage of someone who was very easy to manipulate and who didn't really understand what he was trying to do. She wanted his attention, and he told her they were going to play sex games. So in this particular case, she was unable to discern his motivations and not able to figure out what he was trying to manipulate. Well, never mind. I mean, we're looking at what she knows, right? At least in part. In part, yes. But I would note that another distinction between the federal statutes and the variety of state statutes is that the state statutes all focus on the conduct of the victim. They specifically say her conduct, his or her conduct, the person's conduct as far as the conduct of the victim. And in the legislative history for this statute, Congress said we are going to be more broad. We want to focus not only on the victim's conduct, but on the defendant's conduct. Okay. So what is the, what, to be convicted, what does, what mens rea does Earls have to have? What does he have to intend? That is the second element of the two-part elements that the government has to establish. The government has to establish that the defendant knew, and that's based on, I think, Eighth Circuit case law that the circuit did not disprove in AS. Anyway. Okay, so you agree that you have to prove that he knew something. He knew that she wasn't capable of figuring out what was going on. And that's pretty clear from the record in this case. He told her he wanted to keep it secret. He told her to wait until her mother was asleep to do it. He told her not to tell anybody or they'd get in trouble. Now that, that sounds to me like that could, that could be, there could be lots of reasons for that. Not because he didn't think she understood what they were doing, but because he was married to her mother, knew her mother would be mad at him. Well those aren't the only facts in the record. Right. In addition, he had been living with a CP on and off for seven years. He knew she had, she had a guardianship. He knew she was intellectually disabled. And the evidence in the case was that anyone within five minutes of meeting her could figure out that she couldn't comprehend things very easily. And he, despite that, he told the investigating officer, oh, she was brilliant. And her great grandmother wanted to get the social, the only reason she made her out to be stupid was she wanted the social security payment. When all the evidence was to the contrast. Well, he, I mean, he didn't, I mean, to be fair to the record, he didn't try to convince everyone that he thought she was a genius on all levels. Right. He certainly admitted that he recognized that she had limitations. You would agree with that. And, and maybe he wanted to suggest that, you know, he didn't think they were as bad as the rest of the family was letting on. And that is her grandmother had reasons to falsify that and different things. And the jury was free to accept that, but they did not. And on a review from a judgment of acquittal, this court needs to take all the evidence in the most favorable light to the government. So even though there might've been evidence that the jury could have taken to decide that the defendant didn't know, I think there's plenty of evidence in the record, taking the light most favorable for the government that the defendant did know that she wasn't able to figure out what was going on. Okay. Do you agree that she could understand what the physical act was? I agree that there is testimony that she understood what the parts of the body were and what sex is. However, then she went on and said she never remembered what sex was. And also note that the record indicates that nobody explained to her what sex was until after she made these revelations. So if you read her testimony, it's very clear, which is consistent with the various evaluations, which were introduced into evidence. She's very, she basically answered whatever anybody wanted her to answer. She did cross-examination, you could feed her any question and she'd usually say yes. So if, if we were to decide that your opposing counsel's view of the law was correct, that you had to prove that Earls knew that she couldn't understand the physical aspects of the act itself and the immediate consequences, would you win? I think the government would have trouble meeting his burden, Your Honor, because there is evidence in the record that suggests that she understood the body parts. She understood what the act of sex was and that she understood you could get pregnant. Whether she understood that before she had sex, I have no idea. So that would not be in the record. So then that leaves us in your position, we would have to go a step further and delve into things like societal implications, moral implications, ideas like that. I think you don't have to do it in the abstract, Your Honor. I think that's what the defendant would like you to do because that would help him, that would help the defense argue for a narrow interpretation of the statute. But you don't have to go so broadly in order to conclude here that she was incapable of assessing whether he was trying to manipulate her, or what the impact would be in her family situation. She didn't understand any of that. She was aware, I believe, you told me that she testified that she was told to keep it a secret, that her mother would be really angry if she found out, those type of things, right? That's what the defendant told me. Right, but she absorbed that. She absorbed that, but then she couldn't explain what would happen to her if anybody found out. She absorbed what she wanted to absorb for the purpose of the question, and three questions later, she no longer remembered. I think that if this court looks at the state court decisions, as well as this court's own unpublished decision in 1998, in the RDA Junior case, in that case there was, like in this case, a victim who was very much intellectually on a par with much younger children, and there was a question about the sufficiency of the evidence necessary to satisfy the statute. Granted, the questions about statutory interpretation don't seem to have been raised in that case, but if you look at cases like Beck in Michigan, Easley in New York, and Says in Wyoming, and also look at the Gonzales case in Hawaii, where the court rejected the model penal code argument by looking at the commentary to the model penal code from 1980, noting that if the language of the model penal code were confined to the narrow interpretation the defense here suggests, too many people, or too many, in this case, women who were intellectually disadvantaged would not be protected. And remember, Congress's goal here was to protect those who couldn't protect themselves. I think that the judgment call that Congress made, which is evident from the wording of the statute, is that to some extent government has to be paternalistic here because there really isn't any other way to protect people who aren't minors, but who are so incapacitated intellectually that they can't figure out when someone's trying to abuse them. And in this case, that's exactly what was going on. You can posit situations where a person, where on a different factual scenario, where the statute shouldn't be interpreted so broadly, but this is a judgment of acquittal appeal. And therefore you don't have to interpret the statute for all times in all situations. You have to interpret it for this case. And I think in this case, the government has come forward with more than sufficient evidence to show that there was someone who was in the lowest one percentile of intelligence, lowest one percentile of adaptive behavior, that includes ability to analyze social situations and to just deal with daily living, who couldn't live by herself, and say that this defendant took advantage of her in a way that the statute prohibits. Doesn't this put it, I mean, this statute would have created a defendant in this case if it had not been her stepdad, but it had been some kid off the street. No. I thought about that a lot because I see where that could be a problematic. And I would say two things. First of all, again, statute says that she can't appraise the nature of the conduct in this case. If there is someone out there who didn't intend to manipulate her, who was perfectly, you know, what you see is what you get. She could accept that someone loved her. And in that case, she would have been able to assess that set of situations. It's where you have someone who has, who is using machinations. She just can't gather or she just can't interpret because she's too easily manipulated and she can't see past the very surface of social interaction. That's the problem. If you have some defendant who doesn't intend to do that, who is coming to her. What if they did? What if it was a manipulative young man who. Well, in that case, the other thing is what the question is, if it's a manipulative young man, does he, if he knows, if he's manipulating her and he knows she doesn't understand, under those circumstances, he could be charged with a crime. There's always prosecutorial discretion. There's also her guardians. I mean, in this case, she revealed it and they were appalled. And even the defendant in his closing argument in this case called it gross. So as I said, I don't think in this situation, interpreting the statute as broadly as Congress intended on these facts opens the door to prosecutions for relationships, for all kinds of facts in all times. Certainly that hasn't been the case in this state. And that's, that's what concerns me. Cause that, that makes it seem like you're putting us in the position. To draw lines on morality and societal norms. No. And that's why Congress said the conduct, the conduct in this case, not, not conduct in general or sex in general. Those are, that's the argument the defendant has made. So if it was the kid on the street and you prosecuted him, we would be looking at the conduct and presumably we'd be saying, Oh, well, he's just a kid off the street. It's not as bad when it's just a kid off the street as it is, if it's her stepdad. You have to look at what the facts were, whether he came to it and groomed her in the way this gentleman groomed her to give her all the attention and show her personal hygiene, have her come up to his room. I mean, you can envision a situation where they were in a car and he just kind of clumsily kissed her and that was totally different. So you're saying the conduct means she has to have. Appreciated that she's being manipulated. She has to, the conduct includes her understanding the motivation of one of the actors in the conduct. I think that's part of the conduct. If it were just sex, Congress would have said sexual life, but it didn't. And it's the only time in the entire statute, but it doesn't use the term sexual life. You've got to think that's for a reason. All the statutory construction, we get rid of moral and political consequences. You've already said those that that's too broad, but, but you are saying that she has to know, not just that he's going to perform a physical act on me, but she also has to appreciate that. He's my stepdad. He is trying to manipulate her. He's not doing it because he, he truly wants to have a relationship. I mean, the problem with that is, I mean, I'm just guessing at this now, but I bet that there's, that there's a lot of situations where neither party to a sex act really fully understands the extent to which they're either being manipulated or the event. Well, if that's the case, then the Congress, then the government wouldn't be able to satisfy the second column of the statute, the knowingly problem with the statute. I mean, the, if you read the cases that have defined stat, the somewhat equivalent language more broadly, it's the cause they're presented with situations, whether it's someone in this case or someone with extreme dementia, where person cannot defend himself and, and the government has to step in to protect her. That's the motivation for the language here. If it were any, if it were any, if the Congress intended to be narrower, it could have chosen different words, but it did not. I've well overstepped my time. I would leave my argument on the plain error issue of the, of the sexual abuse nurse to, to my brief. I think it was pretty well brief. Unless the court has any questions about thank you. Counsel. Would you increase the time to two minutes, would you increase the time to two minutes since she went over? So thank you. First of all, there's an, and I don't know how significant it is, but it's significant enough that it was mentioned several times. This was not her stepfather. It is somebody who on and off has spent time with her. It was her mother's boyfriend, not a stepfather. Okay. My, my, my bad. Probably my bad too. So we'll take cumulative error there. And remember too, I mean, this is a balancing act, isn't it? I mean, I'm sure that this was probably discussed by Congress at some point that obviously we can't completely ignore the rights of intellectually disabled folks. I mean, she had, what I believe was described at times as a mild intellectual disability with an IQ of 59 and sometimes as a mild to modern intellectual disability. And certainly she had trouble dealing with, you know, cooking and things like that. They didn't think she'd be able to live on her own, but, but clearly in the cases I cited, you know, I think bear this out that that does not necessarily lead to the conclusion that she couldn't appraise the nature of sexual conduct. And in fact, if you remember, Dr. Ward was called as a witness. He was supposed to testify to that. And the notices that he received of what her testimony was going to be, it was essentially going to be that because of her low IQ, because of her inability to understand that she couldn't appraise the nature that she couldn't consent to sex. Well, before she testified, she said, I can't say that I can't make that 59 IQ and childlike behavior necessarily leads to the conclusion. I can't testify under oath, that that means that she's unable to appraise the nature of sexual conduct. This is ambiguous. Does that mean that the jury couldn't have drawn that inference? I think if we look at, because since we didn't define it anymore, since we look at the plain language of the statute, appraised by some value on the essential nature of the act. No, I don't, I don't think, I think that if we go beyond that, if the jury is dealing with, as the prosecutor tried to get the jury to do and close when the prosecutor argued that they were just there to let the jury to determine whether it's right or wrong. That's a different question. I think the jury clearly could have gone back and determined what we think this is wrong, but it's just, it's just a felony. You're over your time now. Any questions? Okay. Thank you. Thank you. Thank you. Counsel. Case is admitted. Counselor. Excuse.